**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

**IN RE: AQUEOUS FILM-FORMING FOAMS**
**PRODUCTS LIABILITY LITIGATION**
**MDL No. 2:18-mn-2873-RMG**

--------------------------------------------- X

**RICKEY BEHRMAN;**

*Plaintiff,*

-against-

3M COMPANY, f/k/a Minnesota Mining and Manufacturing Company;
AGC CHEMICALS AMERICAS INC.;
ARKEMA, INC.;
BASF CORPORATION;
BUCKEYE FIRE EQUIPMENT COMPANY;
CARRIER GLOBAL CORPORATION, individually and as successor in interest to UTC FIRE & SECURITY
CHEMDESIGN PRODUCTS, INC.;
CHEMGUARD, INC.;
CLARIANT CORPORATION;
CORTEVA, INC.;
DUPONT DE NEMOURS INC., f/k/a DOWDUPONT, INC.;
DYNAX CORPORATION;
E.I. DUPONT DE NEMOURS AND COMPANY, Individually and as successor in interest to DuPont Chemical Solutions Enterprise;
NATIONAL FOAM, INC.;
THE CHEMOURS COMPANY, individually and as successor in interest to DuPont Chemical Solutions Enterprise;
TYCO FIRE PRODUCTS L.P., individually and as successor-in-interest to The Ansul Company.

*Defendants.*

--------------------------------------------- X

Civil Action No.:

**COMPLAINT**
**AND JURY DEMAND**

## COMPLAINT

1. Plaintiff, RICKEY BEHRMAN, by and through their undersigned counsel, The Law Office of Nhan Nguyen, LLP, for this Complaint against Defendants 3M COMPANY, f/k/a Minnesota Mining and Manufacturing Company; AGC CHEMICALS AMERICAS INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER GLOBAL CORPORATION, individually and as successor in interest to UTC FIRE & SECURITY AMERICAS CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC., f/k/a DOWDUPONT INC.; DYNAX CORPORATION; E.I. DU PONT DE NEMOURS AND COMPANY, individually and as successor in interest to DuPont Chemical Solutions Enterprise; NATIONAL FOAM, INC.; THE CHEMOURS COMPANY, individually and as successor in interest to DuPont Chemical Solutions Enterprise; and TYCO FIRE PRODUCTS L.P. (collectively, "Defendants"), individually and, where applicable, as successors in interest to their respective predecessors, for damages arising out of Defendants' manufacture, distribution, marketing, sale, and promotion of products containing per- and polyfluoroalkyl substances ("PFAS").

## JURISDICTION AND VENUE

2. This action is directly filed in the United States District Court for the District of South Carolina pursuant to 28 U.S.C. § 1407 and the Court's Case Management Orders governing direct filing in MDL No. 2:18-mn-2873-RMG.

3. Plaintiff expressly incorporates by reference the allegations of the operative Master Complaint filed in this MDL, as if fully set forth herein.

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Plaintiff's current state of residence is Colorado.

6. Pursuant to CMO No. 3, Plaintiff designates the United States District Court for the District of Colorado as the Home Venue, defined as the proper venue of origin where this action could have otherwise been brought pursuant to 28 U.S.C. § 1391, as a substantial part of the events and omissions giving rise to Plaintiff's exposure to PFAS-contaminated drinking water occurred in El Paso County, Colorado.

7. Nothing in this Complaint or in Plaintiff's direct filing in the United States District Court for the District of South Carolina constitutes a waiver of any party's contention that jurisdiction or venue is improper, that the action should be dismissed or transferred, or that any particular choice of law applies.

8. At the conclusion of pretrial proceedings, this action may be transferred to the Home Venue or another appropriate district pursuant to 28 U.S.C. §§ 1404(a) or 1406, as determined by the Court.

## PARTIES

### PLAINTIFF

9. Plaintiff Rickey Behrman is a citizen and resident of the State of Colorado and at all relevant times was a resident of El Paso County, Colorado.

10. From 1964 through 2025, Plaintiff resided in areas supplied by public drinking water systems and/or private wells contaminated with per- and polyfluoroalkyl substances ("PFAS"), including but not limited to perfluorooctanoic acid ("PFOA") and

perfluorooctanesulfonic acid ("PFOS").

11. Plaintiff was exposed to Defendants' PFAS-containing products through the ingestion of contaminated drinking water and through routine household uses of water, including cooking, bathing, laundering, and other domestic activities.

12. Plaintiff's exposure was continuous and cumulative, occurring over a period of years and/or decades. PFAS are highly persistent, bioaccumulative toxic substances that do not readily degrade in the environment or the human body.

13. As a result of Defendants' conduct, PFAS accumulated in Plaintiff's blood and bodily tissues over time, substantially increasing Plaintiff's risk of serious disease.

14. As a direct and proximate result of Plaintiff's exposure to PFAS, Plaintiff was diagnosed with Kidney Cancer, a serious and life-altering condition scientifically associated with PFAS exposure.

15. Plaintiff has suffered and continues to suffer severe and permanent injuries, including physical pain, emotional distress, medical expenses, loss of enjoyment of life, and other compensable damages.

16. Plaintiff's injuries were caused by Defendants' negligent, reckless, and intentional acts and omissions, including, but not limited to, their failure to warn of known dangers, continued manufacture and sale of PFAS-containing products despite knowledge of their toxicity, and the concealment and suppression of information regarding the health risks associated with PFAS exposure.

**DEFENDANTS**

17. The term "Defendant" or "Defendants" refers to all Defendants named herein jointly and severally.

18. Any and all references to a Defendant or Defendants in this Complaint include, where applicable, that Defendant's predecessors, successors, parents, subsidiaries, affiliates, and divisions.

19. Whenever this Complaint refers to any act or omission of a Defendant, such act or omission includes the acts, omissions, authorizations, and/or supervision (or lack thereof) by that Defendant's officers, directors, agents, employees, and representatives acting within the scope of their employment or agency.

20. At all times relevant to this litigation, upon information and belief, each of the defendants designed, developed, manufactured, marketed, and/or sold the AFFF or fluorochemical products containing PFOA or PFOS used by firefighters throughout the country, including in Colorado.

21. Each of the defendants designed, developed, manufactured, marketed, and/or sold the AFFF or fluorochemical products containing PFOA or PFOS to which Plaintiff was exposed and directly and proximately caused Plaintiff to develop Kidney Cancer, and to suffer severe personal injuries, pain, suffering, and emotional distress.

22. Defendant **3M Company (f/k/a Minnesota Mining and Manufacturing Company) ("3M")** is a corporation organized and existing under the laws of Delaware, with its principal place of business at 3M Center, St. Paul, Minnesota 55144. Upon information and belief, at all times relevant, 3M manufactured, distributed, marketed, and sold fluorochemical products and AFFF, including products containing PFOS and/or PFOS precursors, from the 1960s through approximately 2002.

23. Defendant **Buckeye Fire Equipment Company** ("Buckeye") is a corporation organized and existing under the laws of Ohio, with its principal place of business at 110 Kings Road, Kings Mountain, North Carolina 28086. Upon information

and belief, Buckeye manufactured, distributed, marketed, and/or sold AFFF products containing PFOA and/or PFOS, and/or precursors thereto.

24. Defendant **Chemguard, Inc.** ("Chemguard") is a corporation organized and existing under the laws of Texas, with its principal place of business at One Stanton Street, Marinette, Wisconsin 54143. Upon information and belief, Chemguard manufactured, distributed, marketed, and/or sold AFFF products containing PFOA and/or PFOS and/or precursors thereto. Upon information and belief, Chemguard is affiliated with and/or a subsidiary of Johnson Controls International plc.

25. Defendant **Tyco Fire Products L.P. ("Tyco")** is a limited partnership organized under the laws of Pennsylvania, with its principal place of business at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446. Upon information and belief, Tyco is affiliated with and/or a subsidiary of Johnson Controls International plc. Upon information and belief, Tyco is the successor in interest to **The Ansul Company** ("Ansul"), having acquired Ansul in or about 1990. Beginning in or around 1975, Ansul manufactured and/or distributed and sold AFFF containing PFOA and/or PFOS. After Tyco acquired Ansul, Tyco/Ansul continued to manufacture, distribute, and sell AFFF containing PFOA and/or PFOS. Upon information and belief, Tyco acquired the Chemguard brand in or about 2011 and continues to sell Chemguard AFFF products.

26. Defendant **National Foam, Inc.** ("National Foam") is a corporation organized and existing under the laws of Delaware, with principal places of business at 141 Junny Road, Angier, North Carolina 27501 and 350 East Union Street, West Chester, Pennsylvania 19382. Upon information and belief, National Foam manufactured, distributed, marketed, and/or sold AFFF products containing PFOA and/or PFOS and/or

precursors thereto.

27. Upon information and belief, National Foam is affiliated with and/or a subsidiary of **Angus International Safety Group, Ltd.**

28. Defendant **E. I. DuPont de Nemours & Company** ("E.I. DuPont") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 974 Centre Road, Wilmington, Delaware 19805. E.I. DuPont is sued individually and, where applicable, as successor in interest to DuPont Chemical Solutions Enterprise ("DuPont Chemical Solutions Enterprise"). Upon information and belief, E.I. DuPont and/or its enterprise(s) manufactured, marketed, distributed, and/or sold fluorochemical products and/or PFAS feedstocks used in AFFF products, including through telomerization-based chemistry.

29. Defendant **The Chemours Company** ("Chemours") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 1007 Market Street, Wilmington, Delaware 19889. Upon information and belief, in or about 2015, E.I. DuPont spun off certain "performance chemicals" operations to Chemours along with certain liabilities. Chemours is sued individually and, where applicable, as successor in interest to DuPont Chemical Solutions Enterprise.

30. Defendant **Corteva, Inc. ("Corteva")** is a corporation organized and existing under the laws of Delaware, with its principal place of business at 974 Centre Road, Wilmington, Delaware 19805. Upon information and belief, Corteva holds certain assets and liabilities formerly associated with DowDuPont's agriculture business and is named herein consistent with the corporate separation transactions that occurred in or about 2019.

31. Defendant **DuPont de Nemours Inc. f/k/a DowDuPont, Inc.** ("DuPont de Nemours") is a corporation organized and existing under the laws of Delaware, with

principal places of business at 974 Centre Road, Wilmington, Delaware 19805 and 2211 H.H. Dow Way, Midland, Michigan 48674. Upon information and belief, following corporate transactions and separations effective in or about 2019, DuPont de Nemours retained certain specialty products business lines and associated assets and liabilities.

32. Defendant **Arkema Inc.** ("Arkema") is a corporation organized and existing under the laws of Pennsylvania, with its principal place of business at 900 First Avenue, King of Prussia, Pennsylvania 19406. Upon information and belief, Arkema develops specialty chemicals and fluoropolymers and is a successor in interest to entities including **Elf Atochem North America** and/or **Atofina Chemicals Inc.**, which manufactured fluorosurfactants used in AFFF products.

33. Defendant **AGC Chemicals Americas Inc.** ("AGC Americas") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 55 East Uwchlan Avenue, Suite 201, Exton, Pennsylvania 19341. Upon information and belief, AGC Americas manufactured, marketed, and/or sold fluorinated chemical products and intermediates, including fluorosurfactants and/or related materials used in AFFF products.

34. Defendant **Dynax Corporation** ("Dynax") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 79 Westchester Avenue, Pound Ridge, New York 10576, and an address for service of process at 103 Fairview Park Drive, Elmsford, New York 10523-1544. Upon information and belief, Dynax entered the AFFF business in or about 1991 and became a producer of fluorosurfactants and fluorochemical foam stabilizers used in firefighting foams.

35. Defendant **BASF Corporation,** ("BASF") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 100 Park

Avenue, Florham Park, New Jersey 07932. Upon information and belief, BASF is a successor in interest to entities that manufactured and sold fluorosurfactants for use in AFFF products.

36. Defendant **Carrier Global Corporation** ("Carrier") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418. Carrier is sued individually and, where applicable, as successor in interest to **UTC Fire & Security Americas Corporation** with respect to AFFF-related conduct. Upon information and belief, Carrier and/or its predecessor(s) did business throughout the United States, including in New York, and manufactured, distributed, marketed, and/or sold AFFF products.

37. Defendant **ChemDesign Products, Inc** ("ChemDesign") is a corporation organized and existing under the laws of Texas, with its principal place of business at 2 Stanton Street, Marinette, Wisconsin 54143. Upon information and belief, ChemDesign manufactured, distributed, marketed, and/or sold AFFF containing PFOA and/or PFOS and/or precursors thereto.

38. Defendant **Clariant Corporation** ("Clariant") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 4000 Monroe Road, Charlotte, North Carolina 28205, United States. Upon information and belief, Clariant manufactured, marketed, distributed, and/or sold fluorinated surfactants and/or related chemical products used in AFFF formulations.

## FACTUAL ALLEGATIONS

### THE FLUOROCHEMICALS: PFOA AND PFOS

### AQUEOUS FILM-FORMING FOAM

39. Fluorochemical products are man-made chemicals composed of a chain of carbon atoms in which hydrogen atoms are replaced, in whole or in part, by fluorine atoms, with a functional group attached to the carbon chain. The carbon-fluorine bond is among the strongest in organic chemistry, contributing to the persistence of many PFAS in the environment and in biological systems. Fluorochemical products that contain an eight-carbon chain are sometimes referred to as "C8."

40. Many fluorochemical products are highly mobile in water, facilitating their migration through the environment and contamination of soil, groundwater, and surface water. This mobility is exacerbated by their persistence and resistance to biological, environmental, and photochemical degradation.

41. Fluorochemical products are readily absorbed in animal and human tissues after oral exposure and can accumulate in blood serum and organs, including the kidney and liver. They have been detected globally in water, soil, and air, as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.

42. Fluorochemical products are persistent in the human body. A short-term exposure can result in a body burden that persists for years and can increase with additional exposure.

43. Since they were first produced, information has emerged showing negative health effects caused by exposure to fluorochemical products.

44. According to the United States Environmental Protection Agency ("EPA"),

studies indicate that exposure to fluorochemical products over certain levels may result in developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney among others), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes).

45. The EPA has also warned that there is suggestive evidence of carcinogenic potential for fluorochemical products.

46. The EPA has noted that drinking water can be an additional source of PFC's in the small percentage of communities where these chemicals have contaminated water supplies. "In communities with contaminated water supplies, such contamination is typically localized and associated with a specific facility, for example…an airfield at which fluorochemical products were used for firefighting."

47. The EPA has noted that drinking water can be an additional source of PFAS exposure in communities where these chemicals have contaminated water supplies, and that such contamination is often localized and associated with specific facilities, including locations where PFAS-containing firefighting foams were used.

48. The AFFF designed, manufactured, marketed, distributed, and/or sold by Defendants contained either or both PFOA and PFOS, or the chemical precursors to PFOA or PFOS.

49. PFOA and/or chemical precursors to PFOS contained in 3M's AFFF were manufactured by 3M's patented process of electrochemical fluorination ("ECF").

50. All other Defendants manufactured fluorosurfactants for use in AFFF through the process of telomerization. Telomerization produced fluorotelomers, including

PFOA and/or chemical precursors to PFOA.

51. AFFF can be made without PFOA, PFOS, or their precursor chemicals. Fluorine-free foams and short-chains foams do not release PFOA, PFOS, and/or their precursor chemicals into the environment.

52. When used as Defendants intended and directed, Defendants' AFFF releases PFOA, PFOS, and/or their precursor chemicals into the environment.

53. Once PFOA and PFOS are free in the environment, these chemicals do not hydrolyze, photolyze, or biodegrade under typical environmental conditions and are extremely persistent in the environment. Because of their persistence, they are widely distributed throughout soil, air, and groundwater.

54. Due to the persistence and bioaccumulative nature of these chemicals, among other factors, PFAS released by Defendants have caused and continue to cause injury and damage to Plaintiff.

**DEFENDANTS' KNOWLEDGE**

55. On information and belief, by the early 1980s, Defendants knew, or reasonably should have known, among other things, that: (a) PFOA and PFOS are toxic; and (b) when sprayed in the open environment per the instructions given by the manufacturer, PFOA and PFOS readily migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

56. Defendants also knew or should have known that PFAS could be absorbed through inhalation and ingestion, could persist in the human body for extended periods, and were associated with adverse health effects, including effects on the liver, kidneys,

immune system, and other organ systems, as well as an increased risk of certain cancers.

57. In or about 1980, 3M published data in peer-reviewed literature indicating that humans retain PFOS in their bodies for years. Based on that data, 3M estimated that it could take up to approximately 1.5 years to eliminate half of the accumulated PFOS from the body after exposures cease.

58. By the early 1980s, the industry suspected a correlation between PFOS exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOS in workers' bodies and birth defects in children of workers.

59. In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects – one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.

60. Beginning in 1983, 3M documented a trend of increasing levels of PFOS in the bodies of 3M workers. In an internal memo, 3M's medical officer warned "we must view this present trend with serious concern. It is certainly possible that … exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."

61. Based on information and belief, in 2000, under pressure from the EPA, 3M announced that it was phasing out PFOS and U.S. production of PFOS; 3M's PFOS-based AFFF production did not fully phase out until 2002.

62. From 1951, DuPont, and on information and belief, Chemours, designed, manufactured, marketed, and sold fluorochemical products, including Teflon nonstick

cookware, and more recently, PFAS feedstocks, such as Forafac 1157 N, for the use in the manufacture of AFFF products.

63. Upon information and belief, DuPont and/or related entities supplied fluorochemical products and PFAS feedstocks to AFFF manufacturers and knew or should have known that foreseeable use would result in releases to the environment and migration into groundwater and drinking water supplies.

64. DuPont had been studying the potential toxicity of PFOA since at least the 1960s and knew that it was contaminating drinking water drawn from the Ohio River, and did not disclose to the public or to government regulators what they knew about the substance's potential effects on humans, animals, and/or the environment.

65. By December 2005, the EPA uncovered evidence that DuPont concealed the environmental and health effects of PFOA, and the EPA announced the "Largest Environmental Administrative Penalty in Agency History." The EPA fined DuPont for violating the Toxic Substances Control Act "Section 8(e)—the requirement that companies report to the EPA substantial risk information about chemicals they manufacture, process or distribute in commerce."

66. By July 2011, DuPont could no longer credibly dispute the human toxicity of PFOA, which it continued to manufacture. The "C8 Science Panel" created as part of the settlements of a class action over DuPont's releases from its Washington Works plant reviewed the available scientific evidence and concluded that a "probable link" exists between PFOA exposure and the serious (and potentially fatal) conditions of pregnancy-induced hypertension and preeclampsia. By October 2012, the C8 Science Panel concluded that a probable link also exists between PFOA and five other conditions—high cholesterol,

kidney cancer, thyroid disease, testicular cancer, and ulcerative colitis among other diagnoses.

67. In July 2015, DuPont spun off its chemicals division by creating Chemours as a new publicly traded company, once wholly owned by DuPont. By Mid-2015, DuPont had dumped its perfluorinated chemical liabilities into the lap of the new Chemours.

68. Notwithstanding this knowledge, Defendants continued to design, manufacture, market, distribute, and sell AFFF and/or fluorochemical products for use in AFFF; failed to provide adequate instructions regarding safe use and disposal; failed to warn foreseeable users and affected communities of the risk of contamination to soil, surface water, and groundwater; and failed to recall, reformulate, or otherwise mitigate the foreseeable harms arising from the intended and foreseeable use of these products.

## PLAINTIFF EXPOSURE TO AFFF

69. Defendants designed, manufactured, marketed, distributed, and/or sold PFAS-containing AFFF and related fluorochemical products that were used at and near locations in El Paso County, Colorado, resulting in releases of PFAS into the environment and contamination of groundwater and drinking water supplies.

70. The labels, warnings, and safety materials accompanying Defendants' AFFF did not reasonably or adequately describe the risks PFAS posed to human health or the environment, including the risk of drinking water contamination.

71. The Defendants knew or should have known of the hazards of AFFF containing PFOA or PFOS and/or their precursor chemicals when the products were manufactured.

72. From at least 1964 through the relevant period, Plaintiff resided in El Paso

County in the State of Colorado and ingested drinking water contaminated with PFAS, including PFOA and PFOS and/or their precursors, causing PFAS to enter and accumulate in Plaintiff's body.

73. At no point did Plaintiff receive adequate warning that Defendants' PFAS-containing products were toxic, persistent, bioaccumulative, and associated with serious health risks, including contamination of drinking water supplies.

As a direct and proximate result of Plaintiff's exposure to Defendants' fluorochemical products, Plaintiff has suffered and continues to suffer injuries and damages, including those associated with his diagnosis alleged herein.

**<u>AS AND FOR A FIRST CAUSE OF ACTION</u>**

**PRODUCTS LIABILITY – DEFECTIVE DESIGN – CONSUMER EXPECTATIONS**

74. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

75. At all times relevant to the Complaint, Defendants were regularly engaged in the design, formulation, production, creation, making, construction, assembly, rebuilding, sale, distribution, preparation, and labeling, of fluorochemical products.

76. At all times relevant to this Complaint, Defendants regularly participated in placing the fluorochemical products into the American stream of commerce.

77. As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and/or marketers of fluorochemical products, Defendants owed a duty to all persons whom Defendants' products might foreseeably harm, including Plaintiff, not to manufacture, sell, and/or market any product which is unreasonably dangerous for its intended and foreseeable uses.

78. Plaintiff and/or other users of Defendants' fluorochemical products used these products in a reasonably foreseeable manner and without substantial changes in the condition in which the products were sold.

79. Defendants' fluorochemical products used by individuals and entities in the vicinity of El Paso County, Colorado did not perform as safely as an ordinary consumer would have expected the products to perform when used in an intended or reasonably foreseeable manner because PFOA and PFOS are carcinogens and otherwise harmful to human health.

80. Defendants' defective design of the fluorochemical products was far more dangerous than an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

81. Defendants' fluorochemical products failure to perform safely was a substantial factor in causing Plaintiff's harm.

82. Defendants could have manufactured, marketed, and sold alternative designs or formulations of products that did not contain harmful fluorochemicals.

83. These alternative designs and/or formulations were available, practical, and technologically feasible.

84. The use of these alternative designs would have reduced or prevented the reasonably foreseeable harm to human health that was caused by Defendants' manufacturing, marketing, and/or sale of fluorochemical products.

85. The risks fluorochemical products were not obvious to users of the AFFF, nor were they obvious to individuals in the vicinity of the AFFF use, including Plaintiff, who were unwittingly exposed to Defendants' toxic and carcinogenic chemicals. Indeed,

Plaintiff could not have reasonably discovered the defects and risks associated with the use of fluorochemical products and could not protect herself from exposure to Defendants' fluorochemical products.

86. As a direct and proximate result of Defendants' defective design, Plaintiff has suffered and/or will continue to suffer some or all of the following damages:

(a) Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;
(b) Physical injury, both temporary and permanent;
(c) Economic damages;
(d) Severe and significant emotional distress and mental pain and suffering;
(e) Humiliation, embarrassment, and fear;
(f) Loss of enjoyment of life;
(g) Annoyance and inconvenience; and
(h) Other damages, which, under the law and circumstances, Plaintiff is entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

87. As a result of Defendants' design and formulation of a defective product, Defendants are strictly liable in damages to Plaintiff.

88. Defendants' acts were willful, wanton, reckless and/or conducted with a reckless indifference to the rights of Plaintiff.

## AS AND FOR A SECOND CAUSE OF ACTION

## PRODUCTS LIABILITY – DEFECTTIVE DESIGN – RISK UTILITY

89. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

90. At all times relevant to the Complaint, Defendants were regularly engaged in the design, formulation, production, creation, making, assembly, rebuilding, sale, distribution, preparation, and labeling, of fluorochemical products.

91. At all times relevant to this Complaint, Defendants regularly participated in placing the fluorochemical products into the American stream of commerce.

92. As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of fluorochemical products, Defendants owed a duty to all persons whose Defendants' products might foreseeably harm, including Plaintiff, not to manufacture, sell, or market any product which is unreasonably dangerous for its intended and foreseeable uses.

93. Defendants' fluorochemical products were defectively designed and manufactured when the products left the hands of Defendants, such that the foreseeable risks associated with the use, storage, and disposal of the fluorochemical products exceeded the alleged benefits associated with their design and formulation.

94. At all times relevant to this litigation, Defendants' fluorochemical products reached Defendants' intended consumers and users without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendants.

95. Defendants could have manufactured, marketed, and sold alternative designs or formulations of products that did not contain harmful fluorochemicals.

96. These alternative designs and/or formulations were available, practical, and technologically feasible.

97. The use of these alternative designs would have reduced or prevented the reasonably foreseeable harm to human health that was caused by the Defendants' manufacture, marketing, and sale of fluorochemical products.

98. The fluorochemical products manufactured, sold, or distributed by the Defendants were defective in design because the foreseeable risk of harm posed by the fluorochemical products could have been reduced or eliminated by the adoption of a

reasonable alternative design.

99. As a direct and proximate result of Defendants' defective design, Plaintiff, and other exposed individuals, and the public at large have suffered and will continue to suffer some or all of the following damages:

(a) Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;
(b) Physical injury, both temporary and permanent;
(c) Economic damages;
(d) Severe and significant emotional distress and mental pain and suffering;
(e) Humiliation, embarrassment, and fear;
(f) Loss of enjoyment of life;
(g) Annoyance and inconvenience; and
(h) Other damages, which, under the law and circumstances, Plaintiff is entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

100. As a result of Defendants' design and formulation of a defective product, Defendants are strictly liable in damages to Plaintiff.

101. Defendants' acts were willful, wanton, reckless, and/or conducted with a reckless indifference to the rights of Plaintiff.

**<u>AS AND FOR A THIRD CAUSE OF ACTION</u>**

**STRICT PRODUCTS LIABILITY – FAILURE TO WARN**

102. Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

103. Defendants knew or should have known that exposure to fluorochemical products presented a substantial danger when used because these products are hazardous to human health and the environment.

104. Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling fluorochemical products would result in physical harm to Plaintiff.

105. Ordinary consumers of Defendants' fluorochemical products would not have recognized the risks.

106. Defendants failed to adequately warn Plaintiff and users of Defendants' AFFF products located in the vicinity of El Paso County, Colorado of the potential risks of fluorochemical products.

107. Adequate instructions and warnings on fluorochemical products could have reduced or avoided these foreseeable risks of harm to Plaintiff's health.

108. Had Defendants provided adequate warnings, Plaintiff and users of Defendants' AFFF products located in the vicinity of El Paso County, Colorado could have taken measures to avoid or lessen exposure.

109. The lack of sufficient warnings was a substantial factor in causing Plaintiff harm.

110. Defendants' failure to warn was a direct and proximate cause of Plaintiff's Diagnosis.

111. Defendants' failure to provide adequate and sufficient warnings for the fluorochemical products that they manufactured, marketed, and sold renders the fluorochemical products defective products.

112. As a direct and proximate result of Defendants' defective design, Plaintiff has suffered and will continue to suffer some or all of the following damages:

(a) Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;
(b) Physical injury, both temporary and permanent;
(c) Economic damages;
(d) Severe and significant emotional distress and mental pain and suffering;
(e) Humiliation, embarrassment, and fear;
(f) Loss of enjoyment of life;
(g) Annoyance and inconvenience; and
(h) Other damages, which, under the law and circumstances, Plaintiff is entitled to recover, including attorneys' fees and costs associated with the prosecution of

this action.

113. As a result of Defendants' manufacture, sale, and/or distribution of a defective product, Defendants are strictly liable in damages to Plaintiff.

114. Defendants' acts were willful, wanton, reckless, and/or conducted with a reckless indifference to the rights of the Plaintiff.

**AS AND FOR A FOURTH CAUSE OF ACTION**

**NEGLIGENCE**

115. Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

116. As manufacturers, refiners, formulators, distributors, suppliers, sellers, marketers, shippers, or handlers of fluorochemical products, Defendants owed a duty to Plaintiff and users of Defendants' AFFF and AFFF-related fluorochemical products to exercise reasonable care in the instructing, labeling, and warning of the handling, control, use and disposal of said products.

117. Defendants also voluntarily assumed a duty towards Plaintiff by affirmatively representing to Plaintiff and users of Defendants' AFFF products that Defendants' previously detailed acts and/or omissions were not causing any physical harm or other damage to her, and that Defendant's fluorochemical products were safe to use.

118. Defendants' fluorochemical products are inherently dangerous substances and Defendants owed a duty of care towards the Plaintiff that was commensurate with the harmful nature of the fluorochemical products, and the dangers involved with exposure to fluorochemical products.

119. Defendants failed to correct, clarify, rescind, and/or qualify their

representations to Plaintiff and users of Defendants' AFFF products that Defendants' acts and/or omissions were not causing any physical harm and/or damage to her, or that the fluorochemical products were safe to use.

120. Despite knowing that their fluorochemical products are toxic, can contaminate soil and water resources, and present significant risks to human health and the environment, Defendants failed to use reasonable care when they: (a) designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold fluorochemical products; (b) issued instructions on how fluorochemical products should be used and disposed of; (c) failed to recall and/or warn the users of fluorochemical products of the dangers to human health and water contamination as a result of standard use and disposal of these products; and (d) failed and refused to issue the appropriate warnings and/or recalls to the users of fluorochemical products regarding the proper use and disposal of these products, notwithstanding the fact that Defendants knew, or could determine with reasonable certainty, the identity of the purchasers of their fluorochemical products.

121. But for Defendants' negligent acts and/or omissions, Plaintiff would not have been exposed to toxic fluorochemicals.

122. Defendants' failure to act with reasonable care to (1) design a product to perform safely; (2) failure to use an adequate warning or instruction on the use of fluorochemical products warning and; (3) failure to issue a recall, were substantial factors in causing Plaintiff's harm.

123. Defendants knew or reasonably should have known that users would not realize the danger Defendants' fluorochemical products posed to human health.

124. A reasonable manufacturer or distributor under the same or similar circumstances would have warned of the danger.

125. Defendants' negligent acts and omissions directly and proximately caused Plaintiff's Diagnosis and continue to directly and proximately cause damage to Plaintiff in the form of severe personal injuries, pain, suffering, and emotional distress.

126. Plaintiff is reasonably certain to have future permanent and lasting detrimental health effects due to Plaintiff's present and past injuries directly and proximately caused by Defendants' negligent acts or omissions.

127. It has been reasonably foreseeable to Defendants for at least several decades that Defendants' negligent acts and/or omissions would directly and proximately cause bodily injury and economic damage to Plaintiff including the injuries and damages that Plaintiff suffers from.

128. Defendants were conscious of the dangers of fluorochemical products, and its negligent acts or omissions and were conscious that bodily injury to Plaintiff would or was likely to result from the fluorochemical products and Defendants' negligent acts and/or omissions. Nevertheless, with reckless indifference to these consequences, and as previously detailed, Defendants consciously and intentionally acted negligently and/or omitted the duties Defendants knew it owed to Plaintiff, other exposed individuals, and the public at large, and Plaintiff was harmed as a result.

129. The acts and omissions of Defendants were negligent, intentional, reckless, malicious, willful and/or wanton, and as a direct and proximate result Plaintiff has suffered and will continue to suffer some or all of the following damages:

(a) Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;
(b) Personal injury, both temporary and permanent;

(c) Economic damages;
(d) Severe and significant emotional distress and mental pain and suffering;
(e) Humiliation, embarrassment, and fear;
(f) Loss of enjoyment of life;
(g) Annoyance and inconvenience; and
(h) Other damages, which, under the law and circumstances, Plaintiff is entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

**AS AND FOR A FIFTH CAUSE OF ACTION**

**FRAUDULENT CONCEALMENT**

129. Plaintiff incorporates herein by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

130. Defendants knowingly, intentionally, maliciously, willfully wantonly, recklessly and/or negligently failed and/or refused to advise Plaintiff and users of Defendants' AFFF products of the dangers and/or health risks posed by Defendants' fluorochemical products.

131. Defendants negligently, knowingly, maliciously, willfully, wantonly, recklessly, intentionally, and/or negligently withheld, misinterpreted, and/or concealed information regarding Defendants' fluorochemical products from Plaintiff and users of these products who had a right to know of information which would prevent Plaintiff from being exposed and/or continuing to be exposed to the fluorochemical products.

132. For at least several decades, Defendants had knowledge or the means of knowledge that Defendants' fluorochemical products were causally connected with or could increase the risk of causing damage to humans and animals, including but not limited to knowledge of statistically significant findings showing a causal connection between exposure to fluorochemical products and physical injuries in humans and animals.

133. In connection with the fluorochemical products, Defendants have had and

continue to have a general duty of care to disclose to Plaintiff and users of Defendants' fluorochemical products the actual and potential harm to their persons as a direct and proximate result of Defendants' acts and/or omissions, including a general duty of care to disclose to Plaintiff and users of Defendants' fluorochemical products, that Defendants had, and were continually, exposing Plaintiff and the public at large to harmful levels of fluorochemicals.

134. In addition to its general duty of care, Defendants also voluntarily assumed a duty to disclose to Plaintiff and the users of Defendants' fluorochemical products the actual and potential harm to their bodies as a direct and proximate result of Defendants' acts and/or omissions, including a duty to disclose to Plaintiff and users of Defendants' fluorochemical products that Defendants had exposed, and were continually exposing Plaintiff and the public at large to harmful fluorochemical products, which duty was voluntarily assumed by affirmatively representing to Plaintiff and users of Defendants' fluorochemical products that exposure to these products was harmless, when Defendants knew and/or reasonably should have known that the Defendants' fluorochemical products caused, and were continually to cause, bodily injury.

135. Through Defendants' superior knowledge, responsibility, and/or control over the fluorochemical products, and Defendants' voluntary actions and/or representations, a relationship of trust and confidence existed between Defendants and Plaintiff, and between Defendants and users of Defendants' fluorochemical products.

136. Despite Defendants; knowledge regarding fluorochemical exposure and despite Defendants' duties to disclose to Plaintiff and users of Defendants' fluorochemical products, Defendants negligently, maliciously, knowingly, willfully, wantonly, recklessly

and/or intentionally withheld, misrepresented, and/or concealed information from Plaintiff and users of Defendants' fluorochemical products regarding exposure to these products.

137. Defendants withheld, misrepresented, and/or concealed information regarding fluorochemical exposure from Plaintiff and users of Defendants fluorochemical products with the intention to mislead and/or defraud them into believing that their fluorochemical exposure was not harmful, and to mislead and/or defraud them into continually to use fluorochemical products.

138. Defendants withheld, misrepresented, and/or concealed information regarding fluorochemical exposure that was a substantial factor in causing Plaintiff's harm.

139. As a direct and proximate result of the aforesaid acts and/or omissions by Defendants, acting for and on their own behalf and as agent, ostensible agent, employee, conspirator and/or joint venture of others, Plaintiff was exposed to Defendants' fluorochemical products and were injured.

140. Defendants not only withheld, misrepresented, and/or concealed material information from Plaintiff and users of Defendants' fluorochemical products, but also committed fraud against Plaintiff by affirmatively representing to Plaintiff that their fluorochemical products were harmless and/or did not present any risk of harm, when Defendants knew, reasonably should have known, and/or with utter disregard and recklessness as to whether it was true or not, that Defendants' fluorochemical products had caused, and were continually to cause, bodily injury and/or risk to such bodily injury to Plaintiff.

141. Defendants' representations to Plaintiff and users of Defendants' fluorochemical products were knowingly, intentionally, negligently, and/or recklessly

false.

142. Defendants had, and continue to have, a duty of care to provide Plaintiff and users of Defendants' fluorochemical products, with truthful representations regarding the actual and potential harm to their bodies as a direct and proximate result of Defendants' acts and/or omissions, and Defendants voluntarily assumed a duty of care to provide Plaintiff with truthful representations regarding Defendants' fluorochemical products and the actual and potential harm to their bodies as a direct and proximate result of Defendants' acts and/or omissions.

143. Defendants' affirmative representations and/or omissions to Plaintiff were false and were material to Plaintiff and users of Defendants' fluorochemical products in forming the belief that Defendants' fluorochemical products were safe, in causing him to continue to use the fluorochemical products, and in causing Plaintiff to not seek treatment and/or ways to remedy their past and continuing exposure to fluorochemical products.

144. Defendants made the affirmative representations and/or omissions to Plaintiff and users of Defendants' fluorochemical products with the intention that Plaintiff and users of Defendants' fluorochemical products would be misled into relying on such affirmative representations and/or omissions.

145. Plaintiff relied on Defendants' affirmative representations and/or omissions informing their belief that Defendants' fluorochemical products were safe in causing them to continue to use the fluorochemical products, and in not seeking treatment and/or ways to remedy their past and/or continuing exposure to Defendants' fluorochemical products.

146. As a result of Defendants' act and/or omissions Plaintiff was damaged and physically harmed as a direct and proximate result of their justified reliance on Defendants'

affirmative, fraudulent representations and/or omissions and, as a direct and proximate result of such justified reliance, Plaintiff continued to be exposed to Defendants' fluorochemical products.

**AS AND FOR A SIXTH CAUSE OF ACTION**

**NEGLIGENCE PER SE**

147. Plaintiff incorporates herein by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

148. One or more federal statutes, including but not limited to 15 U.S.C §§ 2607 and 2614, 33 U.S.C. §§ 1311(a) and 1342, and 42 U.S.C. §§ 6921-6939e, impose duties of care on Defendants regarding Defendants' actions and/or omissions towards Plaintiff's safety.

149. By Defendants' acts and/or omissions resulting in harm to Plaintiff, Defendants violated and/or continue to violate and/or breach one or more federal statutes and/or duties, including but not limited to 15 U.S.C. §§ 2607 and 2614, 33 U.S.C. §§ 1311(a) and 1342, and 42 U.S.C. §§ 6921-6939E, constituting negligence per se, including liability for all injuries to Plaintiff associated with the fluorochemical products.

150. Defendants' violation of law and breach of its statutory duties directly and proximately caused and continue to directly and proximately cause damage to Plaintiff in the form of economic damage and bodily injury for which Defendants are liable.

**AS AND FOR A SEVENTH CAUSE OF ACTION**

**PAST AND CONTINUING TRESPASS AND BATTERY**

151. Plaintiff incorporates herein by reference each and every paragraph of this Complaint as though set forth in full herein.

152. At all times relevant to the complaint Defendants have known for several decades that their fluorochemical products are harmful and toxic to humans and animals, and once ingested, will remain in a person's body for a long time, including through binding to blood and/or tissues.

153. Despite such knowledge, Defendants continued to manufacture and produce the fluorochemical products which they knew or should have known would end up in the drinking water, which caused harmful physical contact with Plaintiff.

154. Defendants' continued actions with knowledge that such actions will result in harmful physical contact with Plaintiff demonstrates intent and/or reckless indifference by Defendants without regard to the harm they have caused and will continue to cause.

155. Defendants' intentional acts and/or omissions have resulted in fluorochemical in the body of Plaintiff or otherwise unlawful and harmful invasion, contact, and/or presence of fluorochemicals in Plaintiff's body, which interferes with Plaintiff's rightful use and possession of their bodies.

156. The fluorochemicals present in and/or on Plaintiff's body originating from

Defendants' fluorochemical products were at all relevant times hereto, and continue to be, the property of Defendants.

157. The invasion and presence of the fluorochemical products in and/or on Plaintiff's body were and continues to be unconsented and without permission or authority from Plaintiff or anyone who could grant such permission or authority.

158. Defendants' intentional acts and/or omissions were done with the knowledge and/or belief that the invasion, contact, and/or presence of fluorochemical products onto, and/or into Plaintiff's body were substantially certain to result from those

acts and/or omissions.

159. Harmful contact with Plaintiff's body was the direct and/or indirect result of Defendants' intentional acts and/or omissions.

160. The presence and continuing presence of the fluorochemical products in and/or on Plaintiff's body is offensive, unreasonable, and/or harmful and constitutes a continuing and/or permanent trespass and battery.

161. Defendants' past and continuing trespass and battery upon Plaintiff's body directly and proximately caused and continues to directly and proximately cause damage to Plaintiff in the form of bodily injury, for which Defendants are liable.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

## NEGLEGENT, INTENTIONAL, AND RECKLESS INFLICTION OF EMOTIONAL DISTRESS

162. Plaintiff incorporates herein by reference each and every paragraph of this Complaint as though set forth in full in this cause action.

163. Defendants' acts and/or omissions were negligent, intentional, and/or reckless, including Defendants' continued pollution of the environment and resultant exposure of Plaintiff to harmful fluorochemical products, despite knowing for decades that such exposure was causing, and would continue to cause harm and/or unacceptable risk of harm to Plaintiff.

164. Defendants' negligently, knowingly, and/or intentionally withheld and concealed material information from and/or affirmatively misrepresented to Plaintiff and users of Defendants' fluorochemical products that they were not exposed to harmful fluorochemical products and/or that the fluorochemical products were not causing or

creating any risk of harm to them, despite knowing at the time these concealments and/or misrepresentations were made that the fluorochemical products were in fact causing and would continue to cause harm and/or unacceptable risk of harm to persons, including Plaintiff.

165. At the time of Defendants' negligent, knowing, and/or intentional acts and/or omissions, it was foreseeable to Defendants, and Defendants were certain and/or substantially certain that their actions and/or omissions would cause emotional distress to Plaintiff.

166. Defendants' acts and/or omissions were extreme, outrageous, intolerable, and/or offended the generally accepted standards of decency and morality.

167. By continuing to expose Plaintiff to harmful fluorochemical products, and continuing to misrepresent to Plaintiff and users of Defendants' fluorochemical products that the fluorochemical products were not and would not cause them harm, or risk of harm and/or continuing to withhold and/or conceal from Plaintiff material information on such issues, despite knowing that the fluorochemical products were in fact causing and would continue to cause harm and/or risk of harm, Defendants acted in an extreme, outrageous, and intolerable manner which offended any generally accepted standard of decency and morality.

168. Defendants' acts and/or omissions resulting in Defendants' concealment and/or misrepresentation directly and proximately caused physical harm, and continue to cause physical harm, to Plaintiff.

169. Defendants' acts and/or omissions resulting in Defendants' concealment and/or misrepresentations, directly and proximately caused great emotional suffering, and

continue to cause emotional suffering and distress, to Plaintiff.

170. Defendants' extreme, outrageous and intolerable actions were a substantial factor in causing Plaintiff to suffer severe physical, mental, and emotional distress.

171. As a direct and proximate result of Defendants' extreme, outrageous and intolerable actions, Plaintiff has and will continue to suffer severe physical, mental, and emotional distress.

172. Indeed, reasonable person could be expected to endure the mental anguish caused by the knowledge that entities have negligently, knowingly, and/or intentionally exposed them to years of harmful contact with AFFF containing PFOA or PFOS and/or their precursor chemicals, and have furthermore actively misrepresented and/or concealed such danger from them, while reaping hundreds of millions of dollars in profits as a direct and proximate result.

## CLAIM FOR PUNATIVE DAMAGES

173. Plaintiff hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

174. At all times relevant to the present cause of action, Defendants manufactured, marketed, and sold the fluorochemical products that were used by individuals and entities located in the vicinity of Plaintiff's cities of residence, which resulted in the physical bodily injuries that Plaintiff has suffered and will continue to suffer.

175. At the time the above-described, affirmative, voluntary, and intentional acts were performed by Defendants, Defendants had good reason to know or expect that their fluorochemical products were toxic chemicals capable of causing harm to human health.

176. Defendants' negligent, reckless, willful, fraudulent, and/or wanton actions

and/or intentional failures to act caused Plaintiff to be exposed to fluorochemical products.

177. The willful, wanton, malicious, fraudulent, and/or reckless conduct of Defendants includes, but is not limited to:

(a) issuing no warnings and failing to divulge material information concerning the release of fluorochemicals, including but not limited to PFOA and PFOS;
(b) failing to take all reasonable measures to ensure fluorochemical products were used effectively and properly disposed of;
(c) failing to prevent the foreseeable impacts of fluorochemical exposure upon Plaintiff; and
(d) withholding, misrepresenting, and/or concealing information regarding the release of fluorochemical products and exposure from Plaintiff, other exposed individuals, and the public at large, with the intention to mislead and/or defraud them into believing such exposure was not harmful, and to mislead and/or defraud them into continuing to purchase and consume drinking water contaminated with fluorochemical products.

178. As a result of Defendants' conduct, Plaintiff has been forced to incur and will continue to incur significant costs related to the harm caused by Defendants' fluorochemical products and will continue to suffer serious, debilitating, and severe physical, mental, and emotional distress of his respective diagnoses caused by Defendants' fluorochemical products.

179. Defendants have demonstrated an outrageous, conscious disregard for the physical safety of Plaintiff and acted with implied malice, warranting the imposition of punitive damages.

180. Upon information and belief, Defendants' conduct involved wanton, willful, and/or a conscious and reckless disregard for the health, safety, property, and rights of others. As a reward the Court should award the Plaintiff punitive damages in an amount sufficient to deter and punish such conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff demands judgment against Defendants, and each of them, jointly and severally, and request the following relief from the Court:

(a) Compensatory damages that exceed the jurisdictional limit of this court;
(b) Punitive damages that exceed the jurisdictional limit of this court;
(c) Reasonable fees for attorneys and expert witnesses;
(d) Costs and disbursements of this lawsuit;
(e) Interest on the damages according to law; and
(f) Any other and further relief as the Court deems just, proper and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims asserted in this Complaint.

Dated: **October 31, 2026**

Respectfully submitted,

THE LAW OFFICE OF NHAN NGUYEN

By: *<u>/s/ Nhan Nguyen</u>*
Nhan Nguyen
Texas Bar No. 24041589
Nhan@westlooplaw.com
2500 West Loop South, Suite 340
Houston, Texas 77027
Telephone: 713/840-7200
Telecopier: 713/583-4155
***E-Service**
**Email: eservice@westlooplaw.com**